## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| BRITTANY DIEHL, | : | MOTION TO VACATE |
|    Movant, | : | 28 U.S.C. § 2255 |
| | : | |
| v. | : | CRIMINAL INDICTMENT NO. |
| | : | 1:18-CR-0477-AT-RDC-1 |
| UNITED STATES, | : | |
|    Respondent. | : | CIVIL FILE NO. |
| | : | 1:20-CV-1284-AT-RDC |

## UNITED STATES MAGISTRATE JUDGE'S
## FINAL REPORT AND RECOMMENDATION

Movant has filed a 28 U.S.C. § 2255 motion to vacate, set aside, or correct her federal sentence entered under the above criminal docket number. The matter is before the Court on the § 2255 motion [Doc. 23], Respondent's response [Doc. 25], and Movant's reply [Doc. 36]. For the reasons discussed below, Movant's motion to vacate and a certificate of appealability are due to be denied.

### I. Background

On December 17, 2018, the United States Attorney for the Northern District of Georgia charged Movant by information with one count of wire fraud, in violation of 18 U.S.C. § 1343, for embezzling approximately $400,000 from the Carroll Organization, which is headquartered in Atlanta, Georgia. [Doc. 1 at 1-4]. Movant,

represented by Katryna L. Spearman and Joshua S. Lowther, entered into a guilty plea and plea agreement in which the government agreed to bring no further criminal charges against Movant related to the charge to which Movant was pleading guilty and the parties agreed that the loss amount was "more than $150,000 but less than $550,000[,]" that the government would recommend an acceptance-of-responsibility reduction (with certain exceptions), that the parties would recommend that Movant receive a one-level downward variance, that the government would recommend a sentence at the low end of the guideline range, and that restitution (which would be determined at or before sentencing) would be at least $150,000. [See Doc. 8-1 at 4-5, 7; Doc. 17 at 2]. Movant signed the plea agreement. [Doc. 8-1 at 13]. Movant also signed a statement that she had read the plea agreement, carefully reviewed every part of it with her attorney, understood its terms and conditions, and voluntarily agreed to them. [Id. at 13-14]. At the plea hearing, the government restated the terms of the plea agreement, including the parties' agreement that the loss amount was more than $150,000 but less than $550,000. [Doc. 17 at 19]. The Court asked Movant whether she had received enough time to talk with her attorneys and discuss the case and guilty plea, and Movant responded, "Yes." [Id. at 21]. The Court stated, "Is there anything you want to talk to them about or ask me about before you enter a

2

plea? And you should feel free to do so." [Id.]. Movant responded, "No, No. Thank you." [Id.]. Movant stated that she pleaded guilty, and the Court accepted her plea. [Id. at 22].

The Presentence Investigation Report (PSR) stated that Movant's offense conduct included the following: Movant took an average of $40,089.77 a month and took rent payments totaling $240,619.00 and $160,278.77 from two apartment properties owned by the Carroll Organization, for a total of $400,897.77. [PSR ¶¶ 4, 17, 21-22].[1] In regard to victim impact, the PSR further stated that the Carroll Organization's insurance company, Hartford Fire Insurance Company, had paid the Carroll Organization $380,897.77 and that the Carroll Organization had to pay a $20,000 deductible to Hartford. [Id. at 26]. Movant's guideline calculations were as follows: a base offense level of seven, plus a twelve-level increase based on a loss amount of $400,897.77 under U.S.S.G. § 2B1.1(b)(1)(G),[2] a two-level increase based

---

[1] Movant, through counsel, declined to submit any information in regard to her version of the offense conduct. [Id. ¶ 23].

[2] Section 2B1.1(b)(1)(F) requires a ten-level increase for a loss amount of more than $150,000 and up to $250,000, and § 2B1.1(b)(1)(G) requires a twelve-level increase for a loss amount of more than $250,000 and up to $550,000.

3

on Movant's role in the offense, and a three-level decrease based on acceptance of responsibility, which yielded a total offense level of eighteen. [See PSR ¶¶ 29-30, 32, 36, 37 and at page 14].

The government had no objections and, in accord with the plea agreement, agreed with the acceptance of responsibility decrease. [Doc. 10 at 2]. The government, also in accord with the plea agreement, requested a one-level downward departure for a final level of seventeen and a guideline range of twenty-four to thirty months of imprisonment. [Id.]. Movant agreed with the guideline calculations and asked to be sentenced to a noncustodial term. [Doc. 11 at 1].

At sentencing, with Movant again represented by Spearman and Lowther, the Court asked whether the $400,897.77 loss (the restitution amount) was a number that the defense agreed with; Movant's counsel stated that it was. [Doc. 14 at 3]. The government stated that over the period of ten months, Movant had embezzled $400,000 from her employer at about $40,000 a month. [Id. at 4]. During her allocution to the Court, Movant did not contest the loss amount and in fact stated, "Please know that if you do order a noncustodial sentence, I will spend my days working as hard as I can to pay back every penny that I owe to Carroll. I want to be a better member of my community and set a better example for my son, Jack, and I

can do those things if I am permitted to work towards paying back my restitution." [Id. at 11]. Subsequently, the Court stated to Movant's counsel, "she is not required to say what happened to the $400,000. But it does – you know, when I'm sitting here, it is sort of like, huh? I mean, what happened? Because it is all a very short time frame." [Id. at 16-17]. Counsel had a discussion off the record with Movant and subsequently informed the Court that Movant had used the money to repay student and other loans, and the government stated that Movant essentially had none of the money left. [Id. at 17-18]. The Court adopted the guideline calculations and imposed a below guideline twenty-month term of imprisonment and ordered restitution in the amount of $400,897.77. [Id. at 19, 26].

In her § 2255 motion, Movant contends that she received ineffective assistance of counsel in regard to loss amount and restitution. [Doc. 23 at 5-6, 8-9].

II. **Standard**

   A.   **28 U.S.C. § 2255**

Section 2255 of Title 28 allows a district court to vacate, set aside, or correct a federal sentence that was imposed in violation of the Constitution or laws of the United States or was imposed by a court without jurisdiction, exceeds the maximum sentence authorized by law, or is otherwise subject to collateral attack. 28 U.S.C.

5

§ 2255. The § 2255 movant bears the burden to establish his or her right to collateral relief, Rivers v. United States, 777 F.3d 1306, 1316 (11th Cir. 2015), which is limited. "Once [a] defendant's chance to appeal has been waived or exhausted, . . . we are entitled to presume he stands fairly and finally convicted," and "to obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." United States v. Frady, 456 U.S. 152, 164, 166 (1982).

Section 2255 relief "is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice." Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004) (quoting Richards v. United States, 837 F.2d 965, 966 (11th Cir. 1988)). A constitutional claim of ineffective assistance of counsel, which generally cannot be fully litigated on direct appeal, is properly raised on collateral review in order to allow for adequate development and presentation of relevant facts. Massaro v. United States, 538 U.S. 500, 505-09 (2003).

"The district court is not required to grant a petitioner an evidentiary hearing if the § 2255 motion 'and the files and records of the case conclusively show that the prisoner is entitled to no relief.'" Rosin v. United States, 786 F.3d 873, 877 (11th

Cir. 2015) (quoting § 2255(b)).  That is the case here, as shown in the discussion further below.

### B.     Ineffective Assistance of Counsel

Movant asserts ineffective assistance of counsel, to which Strickland v. Washington, 466 U.S. 668 (1984), applies.  A criminal defendant possesses a Sixth Amendment right to "reasonably effective" legal assistance.  Id. at 687.  To show constitutionally ineffective assistance of counsel, a movant must establish (1) that counsel's representation was deficient and (2) that counsel's deficient representation prejudiced the movant.  Id. at 690-92.  The Court may resolve an ineffective assistance claim based on either of the above prongs.  Pooler v. Sec'y, Fla. Dep't of Corr., 702 F.3d 1252, 1269 (11th Cir. 2012).

Under the first prong, a movant must show that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690.  "Because we presume counsel was competent, [the movant] 'must establish that no competent counsel would have taken the action that his counsel did take.'" Dell v. United States, 710 F.3d 1267, 1281 (11th Cir. 2013) (quoting Chandler v. United States, 218 F.3d 1305, 1315 (11th Cir. 2000) (*en banc*)).  Under the second prong, a movant "must

7

show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. The habeas petitioner or § 2255 movant has the burden of affirmatively proving prejudice, and a "conceivable effect" on the proceedings does not show prejudice. Wood v. Allen, 542 F.3d 1281, 1309 (11th Cir. 2008) (quoting Strickland, 466 U.S. at 693).

## III.  Discussion

Movant contends that counsel Spearman was ineffective (1) for failing to investigate or seek discovery on the loss amount or to litigate the loss amount to ensure that it reflected the true loss amount of $160,000 to $190,000 [Doc. 23 at 5]; (2) for failing to provide the government with a copy of Movant's letter agreement with the victim "stating a loss of 160k"; [id. a 6];[3] (3) for falsely assuring Movant at

---

[3] Movant has attached a copy of a September 11, 2018 "letter agreement" from Paul N. Monnin, counsel for the Carroll Organization, to Jaya Balani, then counsel for Movant. [Doc. 23 at 15-17]. Among other things, the letter contained an agreement (1) that Movant would pay full restitution, "the sum of which remains subject to Carroll's continued investigation"; (2) that $162,000 of restitution was immediately due and payable as material consideration for the agreement; and

the plea hearing (at which time Movant had no time to understand that she was agreeing to a loss amount of $ 400,000)[4] that "they would submit our audits of bank statements, loss letter from Carroll Management Group and have the amount changed to have my points accurate" [id. at 8]; and (4) for failing at sentencing to submit to the government Movant's financial/bank statements and for telling Movant "it doesn't matter now" when Movant wanted to raise the loss amount before the Court [id. at 9]. For relief, Movant seeks a correction of the loss amount and her sentence and a correction of the amount of restitution. [Id. at 14].

---

(3) that Movant "understands that the foregoing restitution amount may not constitute the entire amount of funds she misappropriated from Carroll, and that she is obligated to make full restitution to Carroll[.]" [Id. at 16-17]. The letter concludes, "Please acknowledge [Movant's] assent to the foregoing terms by having her sign below and by countersigning this Agreement as her counsel." [Id. at 17]. The spaces provided for Movant's and her counsel Balani's signatures remain unsigned. [Id.]. The Court notes that, in addition to being unsigned, the letter agreement nowhere agrees as to the amount of loss.

[4] Movant did not specifically agree to a $400,000 loss amount in the plea agreement. Movant agreed that the loss amount was more than $150,000 but less than $550,000. [Doc. 8-1 at 5]. Further, at the plea hearing, the government restated the terms of the plea agreement, including the parties' agreement that the loss amount was more than $150,000 but less than $550,000, and Movant stated under oath that she had received enough time to discuss the guilty plea with counsel and had no questions for the Court. [Doc. 17 at 19, 21].

9

Respondent argues that Movant's challenge to restitution is not cognizable in a § 2255 motion to vacate and that her challenge to counsel's assistance on the loss amount fails in light of her agreement that the loss amount could be as high as $550,000 and in light of Movant saying nothing contrary to the calculated loss amount at sentencing. [Doc. 25 at 4-5, 7-9].

In reply, Movant states that counsel failed to submit an explanation on the loss amount although "the audit" shows a loss of $164,000; that counsel did not submit copies of Movant's financial documents[5] to the government; and that Movant asked counsel at sentencing if she could comment on the loss amount and that counsel told her it was too late and did not matter at this stage. [Doc. 36 at 1, 3].

---

[5] Movant has attached copies of statements for her Bank of America account number 2370 0529 ---- (with handwritten notations), dated (1) August 10 to September 6, 2018, (2) July 10 to August 9, 2018, (3) June 8 to July 9, 2018, (4) May 9 to June 7, 2018, (5) April 7 to May 8, 2018, (6) March 9 to April 6, 2018, (7) February 6 to March 8, 2018, (8) January 9 to February 5, 2018, (9) December 7, 2017 to January 8, 2018, and (10) November 8 to December 6, 2017. [Doc. 36 at 27, 37, 49, 61, 71, 83, 93, 101, 109, 117]. The statements show deposits/additions totaling over $318,000 for the above time period. The handwritten notes, presumably written by Movant, highlight certain portions of these records without explanation of their relevance to the loss calculation agreed to by the parties.

Section 2255 many not be used to challenge restitution. See Mamone v. United States, 559 F.3d 1209, 1211 (11th Cir. 2009) ("Mamone cannot utilize § 2255 to challenge his restitution."). As to application of the guidelines, if a defendant contests a factual statement on loss amount, the government must support its loss calculation, and the district court must make a reasonable estimate of the loss amount. United States v. McDaniel, 503 F. App'x 757, 762 (11th Cir. 2013) (citing United States v. Walker, 490 F.3d 1282, 1300 (11th Cir. 2007), and United States v. Renick, 273 F.3d 1009, 1025 (11th Cir. 2001)). A defendant, however, admits the facts set forth in the PSR when he fails to object to those facts and affirms through his counsel at sentencing that he does not dispute those facts, United States v. Shelton, 400 F.3d 1325, 1330 (11th Cir. 2005), and the sentencing judge is entitled to rely on undisputed factual statements found in the PSR, United States v. Bennett, 472 F.3d 825, 832 (11th Cir. 2006). To show prejudice based on counsel's failure to challenge the loss amount, a § 2255 movant must show that, had counsel objected, there is a reasonable probability that it would have changed the sentencing outcome. Strickland, 466 U.S. at 694.

As an initial matter, Respondent is correct that Movant may not challenge in these proceedings the restitution that she owes. See Mamone, 559 F.3d at 1211. As

11

to loss amount, the Court was entitled to rely on the undisputed factual statements in the PSR on the loss amount,[6] and Movant fails to show that she was prejudiced by counsel's failure to object.  Unless the loss amount was for $250,000 or less, see U.S.S.G. § 2B1.1(b)(1)(F)&(G), there would be no change to Movant's guideline calculation and, thus, no prejudice to Movant.  Even if counsel was deficient in allegedly failing to obtain, provide, or submit the material now discussed by Movant (the letter agreement, Movant's bank account statements, and/or the audit), Movant fails to show that the alleged deficiency prejudiced Movant.  The letter agreement does not support a finding of a loss amount less than $400,000, $250,000 or less, or in any particular amount.  See supra n.3.  The bank account statements provided by Movant (which show deposits for over $318,000 for a ten month time period) are not

---

[6]  In addition to the Court being entitled to rely on undisputed factual statements on the loss amount in the PSR, the Court notes that a loss amount of more than $250,000 and up to $550,000, § 2B1.1(b)(1)(G), is supported by Hartford's payment of insurance proceeds of over $380,000 to Carroll Organization.  See United States v. Parnell, 723 F. App'x 745, 755 (11th Cir. 2018), cert. denied, _U.S. _, 139 S. Ct. 353 (2018) (finding that the loss calculation of the insurance company from insurance proceeds paid to victims was undoubtedly reliable); United States v. Davis, 166 F. App'x 70, 72 (4th Cir. 2006) ("[T]he district court properly made a reasonable estimate of loss based on the fair market value of the stolen vehicles, as reflected by the amounts paid out by the respective insurance companies to the victims of the crimes.").

accompanied by any substantive analysis, pertain to only *one* bank account owned by Movant, and are ambiguous as to what, if anything, they show on loss amount. As to the audit, Movant has not provided a copy of the audit and, thus, fails to show that it would have proven a loss amount of $250,000 or less.

Additionally, the record does not lend credence to Movant's current assertion on the loss amount. The loss amount coincides with Movant's voluntary agreement in her guilty plea that the loss range was more than $150,000 and less than $550,000.[7] Further, the $400,000 loss amount was pointedly discussed at sentencing – defense counsel confirmed to the Court that $400,897.77 was the loss amount; the government stated that Movant had embezzled $400,000 from her employer at about $40,000 a month; the Court invited counsel to explain the circumstances surrounding the expenditure of such a significant sum of money. Defense counsel, in response to the Court's query and after discussion with Movant, informed the Court that Movant had used the money to repay student loans and other debts. Despite the pointed discussion on the $400,000 loss, Movant did not contest that loss amount. Further, when personally addressing the Court, Movant beseeched the Court for a

---

[7] Movant does not challenge that her guilty plea was knowing and voluntary.

13

noncustodial sentence, requesting a noncustodial sentence was so that she could pay back every penny she owed to Carroll, i.e., every penny of the $400,000 amount.

In sum, Movant cannot demonstrate that, had counsel contested the loss amount, there is a reasonable probability that the sentencing court would have changed its loss determination.

## IV.    Certificate of Appealability (COA)

Under Rule 11 of the Rules Governing § 2255 Cases, "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. . . . If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  The Court will issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The applicant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Melton v. Sec'y, Fla. Dep't of Corr., 778 F.3d 1234, 1236 (11th Cir. 2015) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)) (internal quotation marks omitted).

The undersigned recommends that a COA should be denied because it is not reasonably debatable that Movant fails to show that she is entitled to collateral relief.

14

If the Court adopts this recommendation and denies a COA, Movant is advised that she "may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22." Rule 11(a), Rules Governing § 2255 Proceedings for the United States District Courts.

## V.  Conclusion

For the reasons stated above,

**IT IS RECOMMENDED** that Movant's motion to vacate, set aside, or correct her federal sentence [Doc. 23] and a certificate of appealability be **DENIED**.

The Clerk of Court is **DIRECTED** to withdraw the referral of this § 2255 motion from the assigned Magistrate Judge.

**IT IS SO RECOMMENDED and DIRECTED**, this 20th day of August, 2020.

*/s/ R. Cannon*
REGINA D. CANNON
UNITED STATES MAGISTRATE JUDGE